*Kellogg & Spencer*, for plaintiff.

*H. Hall*, for defendants.

BENNINGTON, *February*, 1831.

Angel
*vs*
Pownal.

---

## MILLS MAY & Co. *vs*. CHAUNCEY BROWNELL.

WINDSOR, *February*, 1831.

Lottery tickets, regularly issued, and authorized by the laws of this state, may be sold and charged on book, and the value recovered in an action of book debt.

If there is a dispute whether the plaintiffs owned the tickets charged, letters from the manager of the lottery to the plaintiffs, the hand writing being proved, may be evidence to this point, as a part of the *res gesta*.

If lottery tickets are issued contrary to our general statute, and without authority by a special statute or grant, they are of no value; and if sold and charged on book, the vendor can recover nothing for them.

The manager of a lottery, granted by statute of this state, which requires bonds previous to his right to act, cannot delegate his whole authority, and have the lottery proceed, while he resides out of the U. States.

When the grant of a lottery requires three managers, and provides a mode of filling vacancies, one can never legally act alone.

By reason of a provision in our statute, matters proper to be pleaded to the action, if not so pleaded, may yet be urged before auditors, and they report the facts to the court in the form of a special verdict.

This was an action on *book account*, in which judgement to account was rendered in the county court, and the accounts were submitted to an auditor, who had the parties before him, and audited their accounts, and returned into court a long special report, presenting several points of controversy, and many documents, relating to the grant of a lottery to one Jabez Rogers, in the year 1791, authorizing him to raise £1,200 to remunerate his loss of a brewery by fire.

Sundry exceptions were taken by the defendant to this report, calculated to affect the allowances made by the auditor in favor of the plaintiffs. After a hearing upon these exceptions, the

county court rendered judgement on the report for the defendant to recover his cost.

The plaintiffs excepted to this decision ; and the action was removed to this Court that that decision might be revised.

It is unnecessary to insert the report or exceptions, as all the important facts are sufficiently referred to in the arguments of counsel, and the opinion of the court.

*Hubbard and Marsh, for the plaintiffs.*—The auditor reported, as the balance due the plaintiffs, $400,54.

The account reported as charged,

| | | |
|---|---|---|
| 1826, July 27, To 100 tickets in the first class, | $262,50 |
| " Aug. 9, Cr. by 59 tickets returned, | 154,87 |
| | 107,63 |
| " Aug. To 100 tickets in the 2d class, | 250 |
| | 357,63 |
| Interest allowed by the auditor | 42,91 |

*1st. Exception :* That the tickets were not a subject matter of charge on book.

*Answer :* 1. We deny any such principle. 2. It is as usual to charge tickets, as any other article of sale.—1 *Swift's Dig.* 582. 3. If available, it should be pleaded before the court.—*Stat. p.* 141. The party is entitled to trial by jury. After judgement to account, the court are to appoint auditors to *adjust the accounts.* Whatever goes to the whole *case* must be pleaded—*Cro. Car.* 116 ; 1 *Sel. N. P.* 4. 4. A matter which might have been pleaded cannot be pleaded before auditors.—1 *Com. Dig.* 126, *(E.* 11.*) ;* 3 *Wils.* 73 ; *Cro. Eliz.* 830.

*2d. Exception :* That Mr. Hough's letters were admitted.

*Ans.* 1. The facts stated in the letters were sworn to in his deposition. 2. They were proper for many purposes. 3. They are part of the *res gesta.*

*3d. Exception :* That the auditor received the testimony of *Mills May,* one of the plaintiffs, as to the contract and condition of sale.

*Ans.* This is right ; both parties are made witnesses by the statute.—2 *Aikens' Rep.* 81 ; *Ibid.* 386.

*4th. Exception :* Because the auditor admitted the deposition of A. Rhodes, as sufficient to prove his appointment.

*Ans.* 1. The deposition was pertinent : the appointment was made by the *Judges,* and no record of the appointment was made or required. 2. The appointment appears also from the bond.

3. The auditor was the sole judge of the weight of the evidence.

*5th. Exception:* Because Hough acted under a power of attorney from Rhodes in issuing the tickets : such power could not be delegated.

WINDSOR,
February,
1831.

May et al.
vs.
Brownell,

*Ans.* 1. The tickets were issued in the name of Rhodes, as appears by the scheme. 2. This may be done by an agent : much of the business must be so done. 3. But if so, it should have been pleaded to the action.

*6th. Exception :* Rhodes vacated his trust as manager by moving out of the state.

*Ans.* 1. There is no law requiring a manager to live in the state. 2. An administrator might live out of the state till the statute.— *Stat.* 339, *s.* 34. 3. If Rhodes was never appointed, or if he vacated his appointment, that should have been pleaded to the action.

*7th. Exception :* Because there is no proper evidence that proper bonds were taken.

*Ans.* 1. It does so appear from the bond itself, the only proof required. There was no record ; none was required. 2. The bond was taken by the proper officer. He was the judge of its sufficiency. 3. If none was taken, it would not render void the sale.

*8th. Exception :* Because the auditor did not allow the defendant for the tickets returned.

*Ans.* 1. This is not within any exception taken before the auditor. He states merely that they were returned. 2. The auditor is sole judge of the matters of fact. 3. He found the contract of sale.

*Mr. Collamer, for the defendant.*—The plaintiffs charge on book, and claim to recover, for a quantity of lottery tickets, and the defendant insists that these are not a proper subject of book charge.

Since the court have holden the party in book debt competent to testify to any collateral matter, however special, and all check has become unlimited on that branch, it becomes the more important to restrain the action to originally intended limits, to such business and dealings as usually exist in the ordinary dealings of life. Such certainly is not the present transaction.

The articles here charged have no intrinsic value,—are mere certificates of third persons, depending on a contingency. They are not to be compared to personal securities passing between the parties, and, by consent, entered in account. For these *indebi-*

III

WINDSOR,
*February,*
1831.

May et al.
*vs.*
Brownell.

*tatus assumpsit* is sustainable at common law ; but not for the note or bill of a third person.

The next exception, that the letters of Hough to plaintiffs were improperly admitted, being *"res, inter alias, acta,"* is unquestionably clear in itself ; and it becomes important, when taken in connection with other parts of the case.   By Hough's letter to *Brownell,* (no. 9,) it appears Hough sent the first tickets.   By the credit in the account and by Hough's deposition, it appears the defendant had a right to, and did, return the unsold tickets, to Hough. By Hough's letter, (no. 10,) and by *Brownell's* order, (no. 7,) it appears, *Brownell* ordered the 2d tickets from Hough, at his solicitation ; and a large quantity of unsold tickets are on hand and returned to Hough and into court.   It is therefore as important to the *defendant's* rights, to determine *with whom* he was dealing, as to determine the terms.   From the facts above stated it is apparent the defendant must have understood his dealings to be with Hough, and the same is much confirmed by the following, to wit : It appears by Hough's deposition, that the scheme price of tickets in the 2d class, was $2,25, and that the plaintiffs had them at that price, and a commission for taking at their own price and selling : from this, it is conclusive, the defendant could not have taken them as now charged at $2,50, at his own risk, without commission.   The defendant must have understood his dealings were with Hough and not the plaintiffs.   There is no testimony or fact reported, by which the auditor was authorized to say, the defendant dealt with plaintiffs, or that he could so have understood it ; and these letters, passing between Hough and the plaintiffs, unknown to defendant, ought not to have been admitted to his prejudice.

From the fourth exception to the end, the ground taken for the defendant is this : It not only *does not* appear said tickets were issued lawfully under the authority of the state, but it *does appear* they were unlawfully, and unauthorisedly issued.   The same statute (*p.* 267) which forbids the lottery and exposes the persons erecting it to penalties, under the same circumstances, renders the tickets void.   Tickets, inasmuch as lotteries are by law forbidden, are never to be *presumed* good.   The plaintiff is to show them legally issued ; and in attempting to do this, the plaintiffs have shown these *unlawfully* issued.

1st. The only testimony of Rhodes ever having been appointed manager is his deposition, (no. 4.)   From which it does not appear by whom he was appointed ; and, as the judges of the coun-

Windsor,
February,
1831,

May et al.
vs.
Brownell.

by court were to appoint, it must have been by writing to be an official act ; the existence, loss or contents of which writing are wholly unproved.

2d. The manager, as a condition precedent to his authority, must have given a bond. A copy of the bond he gave is annexed, (no 5,) and is defective, because it is premature, given in anticipation of appointment ; and it is a bond for joint managers, and does not authorize proceedings by Rhodes alone ; and so the tickets void.

3d. The acts granting the lottery, even the last one, authorizing the judges of the county court to appoint managers, all expressly provide for a joint managership, and therefore Rhodes never was, and never could be, sole manager ; and so the tickets void.

4th. Rhodes was resident of Canada ; and a removal out of the government, beyond responsibility to our courts, and all legal controul, vacates the appointment.

5th. The *non user*, for thirty years, had vacated the trust. The franchise was not to be exercised under this trust, the bond having expired, and not now to be supposed as having life or responsibility, and the manager out of the United States. Why would not one of the old managers, who it appears by Rogers's deposition, run away, have as good a right as Rhodes to set up a lottery by attorney. Nor will it do to say any man may usurp the trust, and become " *de facto*" manager ; as the same facts, which render him liable, render the tickets void.

6th. The trust to manager is *personal* and not to be delegated, as public security demands this. But it appears these lotteries were enacted, these *schemes* struck out, and tickets issued by Hough ; Rhodes exercising neither controul, judgement or concern in the matter.

7th. By the grant (no. 1) it was a condition precedent, that Rogers should give bonds, that the avails should be expended in erecting a brewery, &c. Such were never given, and he actually sells out.

Hutchinson, C. J., *pronounced the opinion of the Court.—* This cause was argued a year ago, and not decided ; but laid over for further argument. After the full argument at this term, we are all agreed upon the points of sufficient importance to be noticed in our decision.

The plaintiffs' counsel urge, as an answer to some of the defendant's exceptions to the report, that these points should have

WINDSOR,
February,
1831.

May et al.
vs.
Brownell.

been presented by pleading to the action, and not litigated before the auditor. Upon this we may observe, the provisions of our statute require the auditor to adjust all accounts down to the day of his hearing the parties.

These accounts consist of numerous items, wholly separate and distinct from each other, in every point of view ; and not being like branches from one common root, as the items of a bailiff's account rest on the contract, which constitutes him bailiff. It seldom happens, in an action of book account, founded upon our statute, that any defence could be set up by a plea, that would meet the whole action, unless it be a settlement or discharge, and the statute of limitations. Sometimes the statute would bar some items, and not others. Whereas, in an action against one as bailiff, that he never was bailiff, meets the whole, though the account might consist of a thousand items. Not so in an action of book account. In this there is no general issue, that can be tried, and the cause afterwards go to auditors. If the jury were to adjust the accounts and return the balance, as was formerly done in actions appealed from the judgement of a justice of the peace, *that there is nothing due and in arrear*, might form an apt general issue. But by our statute, the defendant must account, unless he pleads some special matter, which shows, that he ought not to account. Such plea must be tried by the jury ; and, if they find for the plaintiff, auditors are appointed. As a defendant may have such matter to plead, that would meet a part of the account and not the remainder, and pleading it would increase the number of trials in the same action, and produce great delay and expense, this Court settled a practice, before I had the honor of a seat here, and it has been continued ever since, that a defendant may omit to plead such special matter, and may present it before auditors as a defence, in whole or in part : when it becomes the duty of the auditors to report, not the evidence exhibited before them, but the facts they find proved, as the ground of their decision. This should be in substance as a special verdict. The facts being thus found, and presented to the court, the decisions upon points of law can be revised by the court, as they could upon a special verdict. This practice requires, that the facts, upon all litigated items, should appear in the report, or it will be set aside for the defect, or recommitted for amendment. This disposes of one class of the errors pointed out by the plaintiffs' counsel.

A question is raised, whether lottery tickets can be the subject of an action on book. We think they may. If they are legally

WINDSOR,
February
1831.

May et al.
vs.
Brownell.

issued, they are of value as evidence of a debt ; as evidence of a chance to receive a debt, large or small. The current sales a few years past have attached a value to them, almost as to bank bills. It is difficult marking any line of distinction between what may, and may not, be charged on book, any more definite than this ; that articles of personal property sold and delivered, the title vesting in him, who receives the property, and he becoming debtor for it to the other, may be charged on book. These lottery tickets, with the currency attached to them, by the eagerness of people to deal in chances, must be considered as property, and be the subject of book charge. With regard to charges of tickets, and of money, and of other things, proper to be charged on book, where there might be difficulty in detecting a wrong charge, it is not a matter of course that they can be supported by the oath of the party merely. He is a competent witness to testify ; is made so by statute ; and so is the opposite party to the same items. And the auditors must decide, according to the convictions on their minds, of the correctness or incorrectness of the several charges, after weighing all the testimony adduced, which tends to support or defeat the charges.

The defendant excepted to the auditor's receiving, as evidence, certain letters from Hough, who issued the tickets, and who forwarded a part of them to the defendant, which letters were directed and sent to the plaintiffs. Should this exception, and this only, avail the defendant, its effect would be to reverse the judgement of the county court, and send the accounts again to auditors ; for it cannot now be known what effect was produced by those letters upon the mind of the auditor. But, so far as the defendant urges in his defence, that these tickets were not so the property of the plaintiffs, that they are entitled to the pay for them, but that he is accountable for them to Hough, if to any person, these letters may be properly admitted upon that question, as a part of the *res gesta.* They tend to silence any claim, that Hough could have, to be owner of these tickets, after the date of those letters. There is no other view, in which they could have any legal bearing upon the cause.

Another point litigated is, whether Rhodes could delegate to Hough all his authority as manager. It appears by the auditor's report, that Rhodes, claiming to be manager, gave Hough, or undertook to give him, full power to perform all the duties of manager : in fact, to make him manager, but to act in the name of Rhodes. It also appears, that Rhodes lives out of the United States, and did

Windsor,
February,
1831.

May et al.
vs.
Brownell.

so when he executed his power of attorney to Hough.   There are many acts, which the manager of this lottery must be able to do by sub-agents, such as selling tickets, receiving pay for them, &c. ; but we think the whole power of arranging schemes, fixing on the number and price of tickets, and the number and amount of prizes, when to draw the lottery, &c., cannot be thus exercised by proxy.   The whole system of this grant, regulated by three statutes, treats the managers as officers of the government, in some sense.   They are required to give bonds to the treasurer, to secure their fidelity, before they enter upon their business as managers.   It must be treated as a personal trust in the managers, to act upon their own judgement in the principal concerns of the lottery.

If Rhodes had thus acted upon his own judgement in the business, was he a legally constituted mannager, at the time of issuing these tickets?  This leads to an examination of the several statutes upon the subject, to see what constitutes a person manager. The first statute appoints the managers by name : the second supplies vacancies by inserting the names of the persons appointed : the third provides, that the judges of the county court of Addison county may appoint persons to fill vacancies as occasion may require.   All these statutes require a bond to the treasurer, as already mentioned.   Rhodes is not one of the persons named as manager in either of these statutes.   There is no evidence of his having been appointed, except his own deposition, and the copy of his bond to the treasurer.   In his deposition, he does not pretend to *know* how, or by whom, he was appointed, or when ; but thinks it was by judge Strong, of Addison, and one or more of his associates.   But he expresses, that he has no doubt but he was legally appointed in some way ; but whether to be *sole* manager, or jointly with Samuel Miller, or some other person, he does not know.   His bond to the treasurer bears date in February, 1798, and purports to have been signed by Jabez Rogers, Jabez Rogers, jr., said Anthony Rhodes, and Lebbeus Harris ; and the condition is that, whereas the said Rhodes and Harris are, and are about to be, appointed managers of said lottery, if they shall faithfully perform, &c.   We think this testimony does not show Rhodes ever to have been legally appointed manager.   If he was appointed by the judges, their certificate of such appointment would be the most natural and correct evidence of it.   Indeed, it is scarcely a supposable case, that they would make such an appointment, without such a certificate.   If such there was, Rhodes would be the keeper of it.   He neither accounts for not producing

it, nor knows it's contents. Again, the bond would seem of no force at all, unless accompanied with further testimony. It purports to be the joint official bond of Rhodes and Harris, *appointed, and to be appointed, managers.* This bond ought not to be considered of force to secure the fidelity of either as sole manager, but of both acting jointly. Such and such only was the undertaking of the sureties. The testimony reported neither shows an appointment, nor a regular bond.

Windsor, February, 1831.

May et al. vs. Brownell.

We are under no necessity of deciding, what should be presumed at this late day about the regularity of appointment and bonds. My own individual opinion is, that, from the facts presented in this report, it ought to be presumed, that the object of the lottery was satisfied thirty years ago, or else that the whole was then abandoned. If the managers had all this time been exercising their right as such, and this was suffered by the government, it might furnish a ground of presumption that their appointment was once regular. But the entire *non user*, exhibited in the report, tends wholly to a contrary presumption. It is not a supposable case, without proof, that a bond, with four signers, executed in the year 1798, is now of any avail to secure the faithfulness of the managers, in their proceedings of a recent date. There ought, at least, to have been a new bond to the treasurer, binding persons of property, who are known to be living.

A further question has been raised, whether Rhodes, even if regularly appointed, had any power as sole manager. We are of opinion he could have none at all. These statutes all require three managers ; and the provision for filling vacancies extends to all vacancies, so as to keep three managers in any event whatever. If the legislature could have intrusted this business with one person alone, they have not done it ; and no one can have any power, till two others are qualified to act in conjunction with him.

The result of these considerations is, that there was no authority to issue these tickets, that they are wholly void, and not a subject of contract or sale, and, for this reason, no subject of book charge ; and it is not readily discovered, why those who sell them are not subject to the penalties of our general statute, as for selling tickets in private lotteries.

The judgement of the county court is affirmed.